Troy P. Foster #017229
**The Foster Group, PLLC**
7301 N. 16th Street, Ste 102
Phoenix, Arizona  85020
Tel: 602-461-7990
tfoster@thefosterlaw.com
*Counsel for Plaintiffs*

Kenneth Frakes #021776
**Bergin Frakes Smalley & Oberholtzer, PLLC**
4343 E. Camelback Road #210
Phoenix, AZ 85018
kfrakes@bfsolaw.com
*Co-Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Krista Karstens, an individual and Liliana Kazmierczak, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Interactive health, Inc., an Illinois corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br>**(Jury Trial Demanded)** |

For its Complaint against Defendant, Interactive Health ("Defendant" or "the Company"), Plaintiffs Krista Karstens and Liliana Kazmierczak ("Plaintiffs" or "Class Representatives"), referred to jointly as "the parties," alleges as follows:

## BACKGROUND ALLEGATIONS AND JURISDICTION

1. At all times relevant to this Complaint, Ms. Karstens resided in Maricopa County, Arizona, and is a citizen of the State of Arizona.

2. At all times relevant to this Complaint, Ms. Kazmierczak resided in, and is a citizen of, the State of Illinois.

1

3. At all times relevant to this Complaint, Defendant was a Corporation authorized to conduct, and conducting business, in Maricopa County, Arizona and the State of Illinois.

4. Defendant is an Illinois Corporation, authorized to conduct, and conducting business, in several states throughout the United States.

5. Plaintiff Krista Karstens is a current employee of Defendant and started working for Defendant in 2015.

6. Plaintiff Liliana Kazmierczak was employed by Defendant from May 2016 until April 18, 2019.

7. At all times relevant to this Complaint, Defendant has employed Plaintiffs as phlebotomists.

8. The Class Members that Plaintiffs represent are current and former employees of Defendant, employed for some time during March 2016 to present ("Violative Period").

9. Class Members were employed by Defendant across dozens of states across the United States.

10. At all times relevant to this Complaint, Defendant has employed all Class Members in the role of phlebotomists during the Violative Period.

11. Defendant is an employer as defined in 29 U.S.C. § 203(d).

12. Plaintiffs and each Class Member were Defendant's employees as defined in 29 U.S.C. § 203(3)(1).

13. Plaintiffs and each Class Member were engaged in commerce on behalf of Defendant, as defined in the Fair Labor Standards Act ("the Act").  *See* 29 U.S.C. § 203(b); *see also* 29 C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour provisions of the Act as employees 'engaged in commerce' are employees doing work involving or related to the movement of persons or things . . . among the several states or between any State and any place outside thereof.").

14. Defendant is not exempt from paying Plaintiffs and each Class Member for work performed as required by the Act.

15. The acts and omissions forming the basis of this Complaint occurred in Arizona, and several other states across the United States.

16. Jurisdiction and venue are appropriate in this Court pursuant to 29 U.S.C. § 216(b).

## GENERAL FACTUAL ALLEGATIONS

17. Defendant is hired by employers across the United States to facilitate employer wellness initiatives.

18. As part of that service, Defendant employs phlebotomists to visit its clients on-site to perform health assessments, which includes drawing blood, and providing that data to Defendant.

19. Upon information and belief, Defendant has employed approximately 600 phlebotomists during the Violative Period.

20. As phlebotomists, Plaintiffs and each Class Member, are/were non-exempt employees for Defendant.

21. Throughout all times relevant to this Complaint, Defendant treated phlebotomists as non-exempt employees.

22. All phlebotomists are/were required to track the hours worked, report those hours to Defendant, and Defendant purported to pay phlebotomists for hours worked.

23. All phlebotomists are/were paid at an hourly rate.

24. Defendant's policy acknowledges phlebotomists are non-exempt employees.

### Allegations Regarding Required Weekly Free Work

25. Plaintiffs, and each Class Member, is/was required to perform work for Defendant without compensation.

26. Defendant's Company-wide policies and procedures provided that Plaintiffs, and each Class Member, is/was required to perform work without compensation.

27. All of the work performed by Plaintiffs, and each Class Member, was to benefit Defendant.

28. Every week Plaintiffs, and each Class Member, worked he/she is/was required to perform the following tasks without compensation:

    a. Travel to the local FedEx Office in his/her respective city of residence to retrieve the patient files for the next week's job;

    b. Promptly secure the files at his/her home in his/her city of residence;

    c. Review, prepare, and organize the patient files for the next week's job, including printing and completing labels and filling out forms;

    d. Contact the site that he/she is to visit the next week for introduction, general customer service, and to discuss logistics;

    e. Identify local FedEx and LabCorp facilities in the destination city;

    f. Confirm the accuracy of the FedEx shipping lists, and make any necessary corrections, for the next week's job;

    g. Prepare and highlight packets for walk-in patients for the next week's job; and

    h. Confirm all travel plans and coordinate with other phlebotomist team members for the upcoming job.

29. For weeks in which Plaintiffs, and each Class Member, were required to fly to the destination city, Company policy required them to arrive at the airport at least two hours early without compensation.

30. Defendant's policy requires Plaintiffs, and each Class Member, to check their Company emails daily, and make any necessary responses, without compensation.

31. Defendant's policy requires Plaintiffs, and each Class Member, to participate in a weekly conference calls without compensation. If Plaintiffs, or any Class Member, were unable to participate in a weekly call, Defendant required him/her to obtain notes from the call(s), review them, and report that review to his/her supervisor – all without compensation.

**Allegations Regarding Monthly and Annual Required Free Work**

32. Defendant's policies and practices require Plaintiffs, and each Class Member,

4

to perform work on a monthly and annual basis without compensation.

33. Defendant has/does require Plaintiffs, and each Class Member, to complete several hours of trainings without compensation.

34. Defendant has/does require Plaintiffs, and each Class Member, to review and analyze all Standard Operating Procedures and policies regularly while "off the clock."

35. Defendant has/does require Plaintiffs, and each Class Member, to review and replenish inventory without compensation.

36. Defendant has/does require Plaintiffs, and each Class Member, to check supply expiration dates, and replace any expired items, without compensation.

### Allegations Regarding Defendant's Willful Violation

37. Plaintiffs, and various Class Members, tracked the time worked on Defendant's behalf.

38. Defendant removed tracked time from Plaintiffs', and various Class Members', time cards for work performed in paragraphs 24-36 in this Complaint.

39. Defendant reaffirmed its policy and procedure of not compensating Plaintiffs, and each Class Member, for the work performed in paragraphs 24-36 in this Complaint.

40. In refusing to compensate Plaintiffs on one occasion, Defendant's HR manager expressly noted: "I don't know where you get your information" that she should be paid for performing this work.

41. In other correspondence, Defendant's managers reaffirm that Plaintiffs, and each Class Member, do not get paid for travel time when traveling on behalf of Defendant.

42. Defendant's directors recognized the global issue in February 2019 correspondence. In response to having employees put time worked on their time cards (for the tasks outlined above in paragraphs 24-36), the directors admit that Company policy has never paid for it:

> "We are getting more and more hours on the time sheets for time spent traveling and doing other 'work' related tasks. We have been telling them that nothing has

changed since last year but there will be something out to make it clear . . . . they are getting upset."

43. Defendant's directors further recognize the global issue in March 2019 correspondence: "It is not everyone . . . . but they [Plaintiffs and Class Members] are all talking . . . . and I worry that we will have requests of more missing hours."

44. After requesting to be paid for hours worked and denied by Defendant, and/or hearing of others' denials, Plaintiffs and Class Members did not complain each and every time that they were not compensated for work performed on behalf of Defendant.

## **Class Action and Collective Action Allegations**

45. Plaintiffs bring this Class Action on their own behalves, and pursuant to Federal Rules of Civil Procedure, Rules 23(a), (b)(2) and (b)(3), on behalf of the following Class ("Class Members").

46. Plaintiffs also bring this action as a "collective action" under the Act because, as discussed in this Complaint, the Defendants employees are similarly situated.

47. The Class is initially defined as: any current or former employee of Defendant, engaged as a phlebotomist, from March 1, 2016 to date of filing.

48. *Numerosity – Fed. R. Civ. P. 23(a)(1).* The number of Class Members is so numerous that joinder of all individuals to a single complaint would be impractical. Though the exact number of Class Members is unknown and in complete control of Defendant, based upon assignment sheets which identify every current phlebotomist each week, given turnover, it is reasonable to believe that there are a minimum of 500 Class Members. The Class Members are readily identifiable from Defendant's employment and payroll records.

49. *Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and (b)(3).* There are questions of law and fact common to all Class Members. These common questions include, but are not limited to:

    a. Did Defendant fail to pay Class Members for work performed?
    b. Is the phlebotomist position non-exempt under the Act?
    c. Did Defendant's policy prescribe this practice?

50. *Typicality – Fed. R. Civ. P. 23(a)(3)*. Plaintiffs' claims are typical of all other Class Members. Plaintiffs, like all other Class Members, are phlebotomists that performed work for Defendant that was uncompensated. All Class Members were subjected to Defendant's global policy and practice of not paying them for work performed.

51. *Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)*. Plaintiffs will fairly and adequately represent the Class Members. Plaintiffs were employed with Defendant for the entire Violative Period, Plaintiff Karstens remains employed and Plaintiff Kazmierczak represents former employees. The Plaintiffs live in different geographic regions of the country, further representative of the Class Members. Both Plaintiffs have the same non-conflicting interests as the other Class Members. Plaintiffs have retained competent counsel that has experience in litigating Class Action matters, including certified Class Actions that involve federal employment and commercial litigation claims. As such, the Class Members' claims will be fairly and adequately represented by Plaintiffs and their counsel.

52. *Superiority of Class Action – Fed. R. Civ. P. 23(b)(3)*. A class action is superior to other available methods for adjudicating the claims effectively and efficiently. The adjudication through class will avoid potentially inconsistent and conflicting results of the asserted claim. There will be no difficulty in managing the Class, and a single adjudication of the claim will substantially benefit the Class Members and the Court. Damages for individual Class Members are likely inadequate to justify the cost of individual litigation – especially in light of the fact that the Class Members are/were non-exempt employees with relatively lower income. As such, absent class treatment, Defendant's willful violations of law inflicting significant damages in the aggregate would go unremedied.

53. Class certification is also appropriate under *Fed. R. Civ. P. 23(a) and (b) (2)* because Defendant has acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or declaratory relief is appropriate to the Class as a whole.

### Count One:  Violation of FLSA

54. Plaintiffs, and Class Members, re-allege and incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

55. Defendant failed to pay Plaintiffs, and Class Members, for work performed during the Violative Period in violating of the Act.

56. Defendant acted and continues to act with malice or reckless disregard to Plaintiffs' and Class Members' rights, and thus, Plaintiffs and Class Members are entitled to recover punitive damages in amount to be determined at trial.

57. Plaintiffs, and each Class Member, are entitled to recover all unpaid wages, liquidated damages, reasonable attorneys' fees, and costs of the action.

### Count Two:  Declaration and Injunctive Relief

58. Plaintiffs, and Class Members, re-allege and incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

59. There is a present and actual controversy between, on the one hand, Plaintiff and Class Members, and on the other hand, Defendant, concerning their rights and respective duties under the Act.

60. Plaintiffs, and Class Members, contend that Defendant violated their rights under the Act.

61. Plaintiffs, and Class Members, are informed and believe, and therefore allege, that Defendant denies any liability to them.

62. Plaintiffs, and Class Members, seek a judicial declaration of the rights and duties of the respective parties under the Act.  Declaratory relief is therefore necessary and appropriate.

63. Plaintiffs, and Class Members, has suffered injury in fact and has lost money in wages as a result of Defendant's unlawful and unfair practices in violation of the Act.

64. Upon information and believe Defendant continues to violate Plaintiffs' and Class Members' rights arising out of the Act.

65. Accordingly, Plaintiffs and Class Members are authorized to pursue injunctive relief against Defendant that is necessary to prevent Defendant's further violations of their rights under the Act.

66. Defendant acted and continues to act with malice or reckless disregard to Plaintiffs' and Class Members' rights, and thus, Plaintiffs and Class Members are entitled to recover punitive damages in amount to be determined at trial.

## RELIEF REQUESTED

**THEREFORE**, Plaintiffs, and each Class Member, respectfully requests the following relief:

A. A declaratory judgment that Defendants' actions have, and continue to do so, violate Plaintiffs' and Class Members' rights under the FSLA.

B. An award of unpaid wages in an amount appropriate to proof adduced at trial pursuant to 29 U.S.C. § 207 and 216(b).

C. An award of liquidated damages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b).

D. Statutory penalties for willful violations of 26 U.S.C. § 7434;

E. Punitive damages and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

F. Pre- and post-judgment interest on the amount of unpaid wages; and

G. An Injunction against Defendant prohibiting further, and continued violations, of the Act.

**DATED** this 14th day of May, 2019.

| The Foster Group, PLLC | BERGIN FRAKES SMALLEY & OBERHOLTZER |
|---|---|
| /s/ Troy Foster (*with Permission*<br>Troy P. Foster<br>7301 N. 16th Street, Ste 102<br>Phoenix, Arizona 85020<br>*Counsel for Plaintiffs* | /s/ Ken Frakes<br>Ken Frakes<br>4343 E. Camelback Road #210<br>Phoenix, AZ 85018<br>*Co-Counsel for Plaintiffs* |